Jessica Thompson, *pro hac vice to be filed*
Stephanie Verdoia, *pro hac vice to be filed*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 268-9370
E-mail:  jessicat@hbsslaw.com

Cecilia N. Brennan, Esq. (SBN 243954)
HKM EMPLOYMENT ATTORNEYS LLP
401 West A Street, Suite 200 (#77)
San Diego, California 92101
Tel/Fax: (619) 717-6410
Email:  cbrennan@hkm.com

*Attorneys for Plaintiff*
DONALD K.  SHRUHAN, JR. an individual

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD K. SHRUHAN, JR. an individual,<br><br>                              Plaintiff,<br><br>      v.<br><br>APPLE INC., a Delaware corporation, and<br>DOES 1-10,<br><br>                              Defendants. | Case No.<br><br>28 U.S.C. § 1332; Diversity of Citizenship<br><br>**DEMAND FOR JURY TRIAL** |

**TABLE OF CONTENTS**

<u>Page</u>

I.      INTRODUCTION ....................................................................................................1

II.     JURISDICTION AND VENUE ..............................................................................4

III.    PARTIES .................................................................................................................4

IV.     FACTUAL ALLEGATIONS ..................................................................................5

       A.      Donald K. Shruhan, Jr. is an exemplary Apple employee...........................5

       B.      Donald K. Shruhan, Jr. received zero Restricted Stock Units in
            spite of excellent performance in 2019. ......................................................7

       C.      Apple confirmed that it declined to award any RSUs or a merit
            increase because RSUs are designed as an investment in the future...........7

       D.      Apple confirmed that Tom Moyer declined to award RSUs for an
            impermissible age-based reason. ..................................................................8

V.      CAUSES OF ACTION ............................................................................................9

FIRST CAUSE OF ACTION  AGE DISCRIMINATION IN VIOLATION OF
       FEHA (AGAINST ALL DEFENDANTS) ..............................................................9

SECOND CAUSE OF ACTION  FAILURE TO PREVENT DISCRIMINATION
       (AGAINST ALL DEFENDANTS)........................................................................10

THIRD CAUSE OF ACTION  VIOLATIONS OF THE UNFAIR BUSINESS
       PRACTICES ACT (AGAINST ALL DEFENDANTS) .......................................11

PRAYER FOR RELIEF ....................................................................................................12

DEMAND FOR JURY TRIAL .........................................................................................13

COMPLAINT - i
Case No.:
003317-11/2039440 V1

1

# I.    INTRODUCTION

2    1.    Ageism is a stubborn paradox of the modern workplace—highly trained, talented,

3    ambitious workers are shunted to the margins based on ageist stereotypes that they are slowing

4    down, are not innovative, or are likely to retire soon. These biases persist even though older workers

5    take fewer sick days,[1] have better problem-solving skills,[2] are *more* innovative,[3] and are more likely

6    than younger workers to be highly satisfied in their work.[4]

7    2.    Federal and state legislatures have passed antidiscrimination laws after decades of

8    hard-fought advocacy and civil rights leadership. These laws exist to protect all California workers.

9    And private lawsuits like this one are one of their most important enforcement mechanisms.

10    3.    But while California's laws continue to evolve to meet the modern challenges of age

11    bias and discrimination, the data repeatedly show that antidiscrimination laws are not working as

12    intended. In 2018, the Equal Employment Opportunity Commission issued a special report on age

13    discrimination against older Americans. It concluded that even though 50 years had passed since

14    Congress outlawed the practice, "age discrimination remains a significant and costly problem for

15    workers, their families and our economy."[5] Victoria Lipnic, the EEOC's acting chair at the time,

16    went further: "Like harassment, everyone knows it happens every day to workers in all kinds of jobs,

17    but few speak up. It's an open secret."[6]

18    _____

19    [1]Stephen Miller, *Misconceptions About Age and Work Absence Challenged*, SHRM (Jan. 23,

20    2014), *available at*, https://www.shrm.org/resourcesandtools/hr-topics/benefits/pages/age-absence-misconceptions.aspx

21    [2] Fredda Blanchard-Fields et al, *Age Differences in Everyday Problem-Solving Effectiveness: Older Adults Select More Effective Strategies for Interpersonal Problems*, *The Journals of

22    Gerontology: Series B*, Volume 62, Issue 1, January 2007, Pages P61–P64, https://doi.org/10.1093/geronb/62.1.P61

23    [3] Benjamin F. Jones, *Age and Great Invention*, Working Paper 11359, Nat. Bureau of Economic Research (May 2005), *available at* http://www.nber.org/papers/w11359

24    [4] Frances Burks, *What Is the Relationship Between Job Satisfaction & Age?*, *available at* https://smallbusiness.chron.com/relationship-between-job-satisfaction-age-12618.html

25    [5] *The State of Age Discrimination and Older Workers in the U.S. 50 Years After the Age

26    Discrimination in Employment Act (ADEA)*, EEOC Newsroom (June 2018), available at https://www.eeoc.gov/reports/state-age-discrimination-and-older-workers-us-50-years-after-age-discrimination-employment

27    [6] *EEOC Acting Chair Lipnic Releases Report on The State Of Older Workers And Age

28    Discrimination 50 Years After The ADEA*, EEOC Newsroom (June 26, 2018), *available at*

4.      Also in 2018, a ProPublica and Urban Institute study found that **more than half** of older U.S. workers were pushed out of longtime jobs before they choose to retire, suffering irreversible financial damage.[7] The analysis showed that only one in 10 of these workers ever again earned as much as they did before their employment setbacks. Even years afterward, the household incomes of over half of those who experienced such work disruptions remained substantially below those of workers who do not. "This isn't how most people think they're going to finish out their work lives," said Richard Johnson, the Urban Institute economist who worked on the analysis. "For the majority of older Americans, working after 50 is considerably riskier and more turbulent than we previously thought."

5.      And the problem is worsening: Nearly 80% of older workers now say they've seen or experienced age discrimination in the workplace, according to the 2021 survey by AARP.[8] That was the highest share since the group began asking the question in 2003.

6.      California's tech industry has grown up (and thrived) under California's progressive antidiscrimination statutory regime. And yet the industry is repeatedly one of the worst offenders when it comes to age bias. Facebook CEO Mark Zuckerberg famously declared in 2007 that "Young people are just smarter."[9] In 2019, Google agreed to pay $11 million to settle the claims of more than 200 job applicants who said they were discriminated against because of their age.[10]

---

https://www.eeoc.gov/newsroom/eeoc-acting-chair-lipnic-releases-report-state-older-workers-and-age-discrimination-50

[7] Peter Gosselin, *If You're Over 50, Chances Are the Decision to Leave a Job Won't be Yours* Pro Publica, (Dec. 28, 2018), *available at* https://www.propublica.org/article/older-workers-united-states-pushed-out-of-work-forced-retirement

[8] Rebecca Perron, *Age Discrimination Continues to Hold Older Workers Back*, AARP Research, *available at*, https://www.aarp.org/research/topics/economics/info-2021/older-workers-new-skills-covid-19-pandemic.html

[9] Margaret Kane, *Say what? 'Young people are just smarter'*, CNET (March 28, 2017) available at https://www.cnet.com/culture/say-what-young-people-are-just-smarter/

[10] Kathy Gurchiek, *Google Ends Age-Discrimination Suit with $11 Million Settlement*, SHRM (July 24, 2019), available at https://www.shrm.org/resourcesandtools/hr-topics/behavioral-competencies/global-and-cultural-effectiveness/pages/google-ends-age-discrimination-suit-with-11-million-settlement.aspx

7.      In 2020, an EEOC investigation into IBM "uncovered top-down messaging from (IBM's) highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers to make room for" younger ones.[11] One IBM executive referred to older workers as "dinobabies" and stated his intent to "accelerate change by inviting the 'dinobabies' (new species) to leave"[12]

8.      Silicon valley, in particular, is obsessed with youth.[13] A 2015 Payscale survey found that while the median U.S. worker is 42, at Silicon Valley companies, the median employee is more likely to be 31 (Apple), 30 (Google, Tesla), 29 (Facebook, LinkedIn), or younger.[14] And in a survey of US startup founders polled by venture-capital firm First Round Capital, 37% said **age is the strongest investor bias against founders**, while 28% cited gender and 26% cited race. Founders participating in First Round's survey said ageism in tech starts, on average, at the age of 46—and more than a quarter of the founders said the bias affects entrepreneurs as young as 36.[15]

9.      Here, Plaintiff—a 67-year-old seasoned Apple employee—has been a victim of this deeply-rooted Silicon Valley ageism at the hands of Apple.

---

[11] Peter Gosselin, The U.S. Equal Employment Opportunity Commission Confirms a Pattern of Age Discrimination at IBM, Pro Publica, https://www.propublica.org/article/the-u-s-equal-employment-opportunity-commission-confirms-a-pattern-of-age-discrimination-at-ibm

[12] *Lohnn v. IBM*, 1:21-cv-06379-LJL, Plaintiff's Motion for Summary Judgment, Dkt. No. 58 (S.D.N.Y. Feb. 11, 2022).

[13] https://www.newstatesman.com/science-tech/2014/03/brutal-ageism-tech ("[I]t has fallen to Matarasso [a cosmetic surgeon] to make older workers look like they still belong at the office. 'It's really morphed into, 'Hey I'm forty years old and I have to get in front of a board of fresh-faced kids. I can't look like I have a wife and two-point-five kinds and a mortgage.''") *See also*, https://www.usatoday.com/story/tech/columnist/2016/09/15/silicon-valleys-not-so-secret-bias-ageism/90120616/ ; https://www.fastcompany.com/3054204/is-ageism-in-tech-an-under-the-radar-diversity-issue;

[14] https://www.bloomberg.com/news/articles/2016-09-08/silicon-valley-s-job-hungry-say-we-re-not-to-old-for-this;

[15] https://qz.com/work/1514739/startup-leaders-say-age-bias-is-rampant-against-founders-as-young-as-36/

## II.   JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff is of diverse citizenship from Defendant and the amount in controversy exceeds $175,000.

11.     This Court has personal jurisdiction over Defendant Apple Inc. because its principal place of business is in California and it has conducted and continues to conduct business in California.

12.     Venue is proper in this District under 28 U.S.C. § 1391 because the events that gave rise to the claims occurred in substantial part in this District and because Apple Inc. resides in this judicial district for venue purposes.

13.     On or about September 22, 2022 the California Department of Fair Employment and Housing ("DFEH") provided Plaintiff with a right-to-sue letter. Accordingly, this action has been filed within all applicable statutory time periods.

## III.   PARTIES

14.     Plaintiff Donald K. Shruhan, Jr. ("Plaintiff" and/or "Mr. Shruhan") is an individual who at all times relevant to the allegations made in this Complaint was domiciled in Pima County, Arizona.

15.     Plaintiff is informed and believes that Defendant Apple Inc. ("Defendant" and/or "Apple") is, and at all times herein mentioned was, a Delaware corporation qualified to and doing business within the State of California, having its principal place of business either at One Infinite Loop, Cupertino, CA or at One Apple Park Way, Cupertino, CA 95014.

16.     At all times herein, Defendant was and is an employer under the meaning of Government Code § 12926(d). Defendant has over 5 employees.

17.     Plaintiff is unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive. Plaintiff is informed and believes, and thereon alleges, that each of the defendants designated herein as a fictitiously named defendant is, in some manner, responsible for the events happening herein referred to, either contractually or tortuously, and caused the damage

1   to Plaintiff as herein alleged, and Plaintiff will amend this Complaint to allege such true names and

2   capacities when the same are ascertained.

3          18.     Plaintiff is informed and believes, and thereon alleges, that at all times relevant and

4   mentioned herein, Defendants, including DOES 1 through 10, inclusive, and each of them, were the

5   agents, servants, employees and/or joint venturers of their co-Defendants, and each of them, was

6   acting within the course, scope and authority of said agency, employment and/or venture, and that

7   each and every Defendant, as aforesaid, when acting as a principal, was negligent in the selection

8   and hiring, retention, training and supervision of each and every other Defendant as an agent,

9   employee and/or joint venturer.

10                        IV.     FACTUAL ALLEGATIONS

11   A.     Donald K. Shruhan, Jr. is an exemplary Apple employee.

12          19.     Plaintiff commenced employment with Apple in 2008, and currently serves as a

13   Director in Apple's Intellectual Property Enforcement unit. He came to Apple in 2008 with decades

14   of investigative experience at the U.S. Customs Service/U.S. Homeland Security Investigations and

15   Pfizer Inc. Plaintiff was Apple's first Senior Director for Global Security in the Asia-Pacific

16   ("APAC") region, where he developed investigative programs to combat security leaks, mass

17   production security leaks, fraud and major theft in the region.

18          20.     Plaintiff split his time as Senior Director between the Global Security and the

19   Intellectual Property Enforcement (IPE) teams while in the APAC region. In IPE, Plaintiff managed

20   all enforcement activities relating to counterfeiting in the region. As one of Plaintiff's supervisors

21   Tom Moyer ("Mr. Moyer") described in Plaintiff's 2018 review, the APAC region is "one of Apple's

22   most important and challenging regions," and Plaintiff was successfully leading it.

23          21.     Plaintiff's supervisor noted that that the IP Enforcement APAC team had "some of

24   our biggest ever successes in FY18 thank[s] to Don. . . ."

25          22.     Plaintiff's performance is likewise unequivocally positive as evidenced by feedback

26   from supervisors and peers reflected in his reviews from 2017-2021. Plaintiff "achieved" or

27   "exceeded" expectations for each yearly review from both supervisors. Below are some excerpts

28   from these yearly reviews:

- "Don's network and experience is irreplaceable." (2017 year-end review)

- ". . . I find Don to be the singularly most focused investigator we have on our staff." (2018 year-end review)

- "As always, Don brings unmatched expertise and resourcefulness in getting things done throughout APAC, the US and internationally, along with a tireless work ethic and a collaborative, enthusiastic nature." (2018 year-end review)

- "Don continues to be Apple's point expert for regional fraud." (2019 year-end review)

- "He has the single largest portfolio of APAC legal contacts in Asia - perhaps in the security industry." (2019 year-end review)

- "IP Enforcement APAC has had some of our biggest ever successes in FY19 in APAC and globally thanks to Don. . . ." (2019 year-end review)

23.     Based on Apple's manager compensation guidelines, Restricted Stock Units ("RSUs") are given to "retain key employees" in lead positions. Apple's pattern and practice is to award RSUs to its employees. Each year, Apple HR issues a bracket for managers to guide their determination of RSU awards based on performance, with higher performers to be awarded RSUs at the higher end of the bracket, and lower performers at the lower end, etc.

24.     Other than in 2019, Plaintiff received RSU awards consistent with this policy and practice. As a measure of this excellence, Plaintiff has been awarded merit increases and RSUs along with these reviews in every year except 2019. Plaintiff's direct supervisors emphasized the importance of retaining him when awarding RSUs.

25.     Apple notified Plaintiff in 2018 that it would not renew his expat package, and therefore he would be leaving the APAC region by 2020. Once his supervisor on the IPE team learned this, he approached Plaintiff and asked if he would consider working exclusively for the IPE team. Plaintiff told his supervisor that he would consider the move on the conditions that he would: be permitted to work from Arizona; be at least a Director-level employee; and have a global role as a mentor to the IPE team.

26.     Plaintiff's IPE supervisor was thrilled that Plaintiff would consider taking this new role, and notified Apple's Vice President & Chief IP Counsel, who worked with Human Resources to begin the transition process.

27.     By the time Plaintiff left the APAC region in 2020, he had personally developed best-in-class programs in Global Security and IP enforcement. According to Mr. Moyer, Plaintiff had saved Apple hundreds of millions of dollars during this period.

**B.     Donald K. Shruhan, Jr. received zero Restricted Stock Units in spite of excellent performance in 2019.**

28.     On September 26, 2019, Mr. Moyer gave Plaintiff one of his many excellent reviews. However, by the end of the review he informed Plaintiff that the Company was not awarding him RSUs. Plaintiff is unaware of any other Senior Director who met or exceeded expectations but did not receive any RSUs. He was 64 years old at the time.

29.     The two other Senior Directors in Plaintiff's organization, Legal Global Security, received RSUs commensurate with their performance. Each was significantly younger than Plaintiff.

30.     In the two preceding fiscal years when Plaintiff received similar excellent reviews, he was granted RSUs valued at $850,000 and $800,000 respectively. The total number of shares that he should have received in 2019 was between 14,977 and 14,097 shares at $56.75/share, with a value at the time of between $800,000 and $850,000.

**C.     Apple confirmed that it declined to award any RSUs or a merit increase because RSUs are designed as an investment in the future.**

31.     Between September and December of 2019, Plaintiff attempted to resolve the matter with his immediate supervisor (Mr. Moyer) and Apple's Human Resources ("HR") department. Mr. Moyer confirmed that he failed to award any RSUs because RSUs are designed as an investment in the future and a retention hook. Mr. Moyer's statement implied that because of Plaintiff's age, Mr. Moyer (1) no longer saw him as part of Apple's future, and (2) no longer saw the need to incentivize Plaintiff's continued employment with Apple because he was nearing retirement age.

32.     On December 11, 2019, Plaintiff brought this matter to the attention of Kate Adams, Apple's General Counsel. Ms. Adams informed Plaintiff that he should try to work it out with HR, but to follow up with her if he couldn't resolve it.

33.     Plaintiff contacted HR and was told that the RSUs were withheld because there was a "clawback" policy regarding RSUs. HR representatives claimed that they performed a detailed "clawback" analysis and compensation review that coincidently found that Plaintiff was entitled to zero RSUs. Plaintiff asked for a copy of the "clawback" policy and was told that there was no written policy. He has also asked for a copy of the compensation review multiple times, but to date has not been provided any documentation supporting this review.

34.     HR was unable to provide any written policy at the time or any calculations reflecting the claimed "compensation review" showing that the discrepancy in compensation for 2019 was exactly equivalent to the full value of the RSUs (thus justifying Mr. Moyer's failure to award RSUs).

35.     Plaintiff continued to discuss the matter with his direct supervisors throughout 2020 and 2021.

**D.     Apple confirmed that Tom Moyer declined to award RSUs for an impermissible age-based reason.**

36.     On or around October 2021, Plaintiff filed an Employee Relations ("ER") complaint alleging age discrimination. Plaintiff explained that in FY2019, as a Senior Director he received an excellent performance review yet was not awarded any RSUs, nor did he receive a merit increase. Plaintiff reported that it was the first time in 11 years that his stock award was not commensurate with his professional achievement.

37.     After another excellent performance review in FY 2021, Plaintiff was advised that his RSU award would again be diminished.

38.     In September of 2021, Plaintiff was asked to submit an email indicating his plan for retirement. He had never notified Apple of his intention to retire.

39.     At that time, Plaintiff also learned that Apple HR was seeking his demotion to Individual Contributor 6.

40.     During a February 2022 call with Employee Relations at the conclusion of the investigation, Plaintiff was told that he was not awarded any RSUs in 2019 because Tom Moyer thought he was retiring. This was an age-based assumption on the decision-maker's part, with no basis in fact.

COMPLAINT - 8
Case No.:
003317-11/2039440 V1

41.    At the time he made this decision, Mr. Moyer knew that Plaintiff was negotiating a transition, not his retirement. Mr. Moyer reviewed and signed Plaintiff's 2019 review which stated, in part, that his co-workers and supervisors looked forward to continuing to work with him in 2019.

42.    When Plaintiff asked Apple's internal investigator if she conducted interviews with Apple's Vice President & Chief IP Counsel (a fact witness with first-hand knowledge of Plaintiff's intentions and Mr. Moyer's awareness of his intentions), she confirmed she failed to do so.

43.    In a follow-up call with Apple Employee Relations, Plaintiff asked why Apple's justification had changed—*i.e.*, why was there was no reference on any "clawback" policy as a justification for this decision. Employee Relations could not answer this question, but did provide an undated copy of a clawback policy. It does not appear that Apple made any effort to comply with the procedure and justifications for this policy in connection with its 2019 decision to award zero RSUs to Plaintiff.

44.    On or around February 23, 2022, after he exhausted all efforts with Apple HR and ER, Plaintiff again contacted Ms. Adams to discuss this issue. He did not receive a response.

45.    In one final attempt to resolve this issue short of litigation, Plaintiff requested a mediation with Apple counsel, which took place on September 6, 2022. The parties did not make progress. And so, regrettably, Plaintiff had no choice but to file this Complaint.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### AGE DISCRIMINATION IN VIOLATION OF FEHA
### (AGAINST ALL DEFENDANTS)

46.    Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation contained in the previous paragraphs as though fully set forth herein.

47.    At all times herein mentioned, FEHA, Government Code § 12940 *et seq*. was in full force and effect and was binding against Apple.

48.    Plaintiff was an employee of Apple within the meaning of FEHA.

49.    Apple was at all material times an employer within the meaning of FEHA and as such, barred from discrimination in employment decisions on the basis of age.

COMPLAINT - 9
Case No.:
003317-11/2039440 V1

50.     Apple and its agents discriminated against Plaintiff on the basis of age in violation of FEHA, Government Code § 12940(a), and Article I of the California Constitution by engaging in the course of conduct more fully set forth in the Factual Allegations above and including, without limitation, failing to award RSUs commensurate with performance and the desire to retain Plaintiff and threatening to demote him based on Plaintiff's advanced age and a discriminatory assumption that he would soon retire.

51.     The discriminatory practices as alleged in the Factual Allegations were approved and ratified by the Company's management, including Tom Moyer and Debbie Rice due to their failure to take action following Plaintiff's repeated complaints outlining with specificity that he had been the victim of age discrimination.

52.     As a direct and proximate result of the Company and its agents' age discrimination against Plaintiff, Plaintiff has suffered: (a) humiliation, serious mental anguish and emotional and physical distress; and (b) loss of past and future earnings and employment benefits and opportunities; all on account of which Plaintiff is entitled to compensatory damages in an amount according to proof.

53.     Plaintiff has also incurred, and will continue to incur, necessary and reasonable attorney's fees and costs in order to enforce his rights, which he is entitled to recover under FEHA.

**SECOND CAUSE OF ACTION**

**FAILURE TO PREVENT DISCRIMINATION**
**(AGAINST ALL DEFENDANTS)**

54.     Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation contained in the previous paragraphs as though fully set forth herein.

55.     Under FEHA, it is unlawful for an employer to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring. Cal. Gov. Code § 12940(k)

56.     Although on notice, Defendant, in violation of Cal. Gov. Code § 12940(k), failed to take reasonable steps to protect Plaintiff from the discrimination alleged herein.

57.     Despite Apple's knowledge of the discrimination alleged herein, and the actual knowledge of its agents, Apple allowed the harassment and discrimination of Plaintiff based on his age to continue and ultimately threatened to demote him to Individual Contributor 6 from Director.

58.     As a proximate result of Defendants' unlawful acts, Plaintiff sustained a loss of earnings, fringe benefits, and/or promotions, and suffered emotional distress, humiliation, embarrassment, and the loss of enjoyment of life, manifested by feelings of depression, humiliation, embarrassment, anxiety, nervousness, and other symptoms of stress. Damage amounts are to be determined at trial.

59.     Plaintiff is entitled to damages, reasonable attorneys' fees and costs, and other appropriate relief as determined by this Court.

60.     In doing the acts alleged herein, Defendants acted maliciously and oppressively, with the wrongful intent of injuring Plaintiff, and acted with an improper and evil motive amounting to malice, in conscious disregard of Plaintiff's rights. Because the acts taken toward Plaintiff were carried out by Defendants acting in a despicable, deliberate, and intentional manner, Plaintiff is entitled to recover punitive damages in an amount according to proof at trial.

## THIRD CAUSE OF ACTION

### VIOLATIONS OF THE UNFAIR BUSINESS PRACTICES ACT
### (AGAINST ALL DEFENDANTS)

61.     Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation contained in the previous paragraphs as though fully set forth herein.

62.     The California Unfair Competition Law, California Business and Professions Code § 17200 *et seq*. ("UCL" or "B&P"), defines unfair competition to include any "unlawful," "unfair," or "fraudulent" business act or practice. Cal. Bus. & Prof. Code § 17200.

63.     Defendants' conduct, as alleged above constitutes unlawful, unfair and/or fraudulent business practices for the reasons set forth above.

64.     As a result of Defendants' unlawful, unfair and fraudulent conduct, Plaintiff suffered emotional distress, humiliation, embarrassment, and the loss of enjoyment of life, manifested by

COMPLAINT - 11
Case No.:
003317-11/2039440 V1

feelings of depression, humiliation, embarrassment, anxiety, nervousness, and other symptoms of stress.

65.     Pursuant to B&P § 17203, Plaintiff seeks declaratory and injunctive relief for Defendants' unlawful, unfair and fraudulent conduct and to recover restitution.

66.     Pursuant to Code of Civil Procedure § 1021.5, Plaintiffs and other aggrieved parties are entitled to recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action.

67.     Under B&P § 17203, Plaintiff seeks an order of this Court: (a) enjoining Defendants from continuing to engage, use, or employ any unlawful, unfair and/or deceptive business act or practice and any act prohibited by B&P § 17200 et seq.; and (b) restoring all monies that may have been acquired by Defendants as a result of such unlawful, unfair or deceptive acts or practices.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as follows:

A.      For emotional distress damages in an amount to be proven at trial;

B.      For compensatory, economic, general, and special damages in amounts to be proven at trial;

C.      For punitive damages in an amount necessary to punish and make an example of Defendants;

D.      For the reasonable value of attorney services and fees, pursuant to applicable statutes, including, but not limited to, FEHA;

E.      For prejudgment interest;

F.      For an order of this Court: (a) enjoining Defendants from continuing to engage, use, or employ any unlawful, unfair and/or deceptive business act or practice and any act prohibited by B&P § 17200 et seq.; and (b) restoring all monies that may have been acquired by Defendants as a result of such unlawful, unfair or deceptive acts or practices;

G.      Under B&P § 17206, that Defendant Companies be assessed a civil penalty in the amount of $2,500 for each violation of the UCL, according to proof;

H.      Under B&P § 17536, that Defendant Companies be assessed a civil penalty in the

1   amount of $2,500 for each violation of B&P § 17500, according to proof; and

2       I.    For such other and further relief as this Court deems just and proper.

3                          **DEMAND FOR JURY TRIAL**

4       Plaintiff Donald K.  Shruhan, Jr. hereby demands a trial by jury on all claims.

5

6   DATED: September 26, 2022.        Respectfully submitted,

7                                     HAGENS BERMAN SOBOL SHAPIRO LLP

8                                     By  */s/Jessica Thompson*
9                                         Jessica Thompson, *pro hac vice to be filed*
                                      Stephanie Verdoia, *pro hac vice to be filed*
10                                    HAGENS BERMAN SOBOL SHAPIRO LLP
                                      1301 Second Avenue, Suite 2000
11                                    Seattle, Washington 98101
                                      Telephone: (206) 268-9370
12                                    E-mail:  jessicat@hbsslaw.com

13                                    Cecilia N. Brennan, Esq. (SBN 243954)
14                                    HKM EMPLOYMENT ATTORNEYS LLP
                                      401 West A Street, Suite 200 (#77)
15                                    San Diego, California 92101
                                      Tel/Fax: (619) 717-6410
16                                    Email:  cbrennan@hkm.com

17                                    *Attorneys for Plaintiff*

18

19

20

21

22

23

24

25

26

27

28